IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **AMEDISYS, INC.,** *et al.*, | |
|     **Plaintiffs,** | |
|     v. | Case No. 14-1357 |
| **INTERIM HEALTHCARE OF WICHITA, INC.,** *et al.*, | |
|     **Defendants.** | |

## MEMORANDUM AND ORDER

This matter comes before the court on Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction (Doc. 4). The court held an evidentiary hearing on plaintiffs' motion, and the parties filed post-hearing briefs. For the reasons below, the court grants plaintiffs' motion for preliminary injunction.

## I. Background

Plaintiffs filed this suit against defendants Interim Healthcare of Wichita, Inc. ("Interim") and Lisa Stearns, alleging a breach of contract against Stearns, tortious interference with contract against Interim, and civil conspiracy against both. Interim directly competes with plaintiffs in a few areas and offers similar services in other areas. Plaintiffs also filed the present motion, seeking to enforce the non-compete provision in its Employment Agreement with Stearns. Stearns is a former account representative with plaintiffs and a current account representative at Interim.

## II. Legal Standard

A preliminary injunction is an extraordinary remedy that should be granted only when the moving party clearly and unequivocally demonstrates its necessity. *Hill's Pet Nutrition, Inc. v. Nutro Prods., Inc.*, 258 F. Supp. 2d 1197, 1204 (D. Kan. 2003) (citation omitted). Plaintiffs must show: "(1)

-1-

a likelihood of success on the merits; (2) a likelihood that the movant will suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in the movant's favor; and (4) that the injunction is in the public's interest. *Crowe & Dunlevy, P.C. v. Stidham*, 640 F.3d 1140, 1157 (10th Cir. 2011) (citing *Chamber of Commerce v. Edmondson*, 594 F.3d 742, 764 (10th Cir. 2010) (internal quotation marks omitted); Fed. R. Civ. P. 65). These must be proven by clear and unequivocal proof. *O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 976 (10th Cir. 2004) (en banc). Where the movant has prevailed on the other factors, the Tenth Circuit generally uses a liberal standard for the "likelihood of success on the merits" factor, meaning the movant need only raise "questions going to the merits so serious, substantial, difficult and doubtful as to make them a fair ground for litigation and thus for more deliberate investigation." *Lundgrin v. Claytor*, 619 F.2d 61, 63 (10th Cir. 1980) (internal quotations omitted).

The following three types of injunctions are subject to a heightened burden: (1) preliminary injunctions that alter the status quo, (2) mandatory preliminary injunctions; and (3) preliminary injunctions that afford the movant all the relief it could recover at the conclusion of a full trial on the merits. *O Centro*, 389 F.3d at 975. If the injunction is one of those three types, the Tenth Circuit's modified-likelihood-of-success-on-the-merits standard is unavailable. *Id*. at 975–76.

**III. The Agreement**

On December 14, 2012, plaintiffs and Stearns entered into an Employment Agreement ("Agreement"). (Hearing Pl. Ex. 5.) The Agreement provides in relevant part as follows:

> Employee covenants and agrees that during his/her employment, and for a period of one (1) year after Employee's employment with the Company is terminated or ends for any reason (the "Non-Competition Period"), Employee will not, as an employee, consultant, independent contractor, officer, shareholder, director, partner, owner, or in any other capacity, provide, manage or supervise services within the "Restricted Area" . . . that are the same as or similar in purpose or function to those services [Stearns] has provided to the company . . . if such services are being provided for the benefit of any business, firm,

>proprietorship corporation, partnership, association, entity or venture engaged in any part of the Business . . .
>
>During Employee's employment, and for a period of one (1) year after Employee ceases to be employed by the Company for any reason, Employee will not knowingly contact, solicit, or communicate with a client, customer, patient or Referral Source to cease or reduce doing business with the Company or to divert Business-related opportunities (home health or hospice care) to some person or entity engaged in any part of the Business (other than the Company), nor will Employee aid or assist any other person, business, or legal entity to do any of the aforesaid prohibited acts. The restriction created by this paragraph (the "Non-Solicitation Restriction) is limited to clients, customers, patients and Referral Sources that Employee had material contact or business dealings with . . .
>
>In the event Employee breaches a time-limited restriction contained in this Agreement, Employee hereby agrees that the applicable period of restriction shall be extended by one day for each day the Employee is to have been in violation of such restriction up to, but not to exceed, a length of time that is equal in length to the period of restriction that would have applied absent the violation.

(*Id*. at 5–6, ¶¶ 3a, 3b, 4d.)

## IV. Analysis

Plaintiffs seek an injunction, enjoining Stearns from competing against plaintiffs pursuant to her Agreement and Interim from enabling such competition. It is undisputed that this agreement exists and was executed by Stearns. Defendants argue, however, that the agreement is unenforceable, for a variety of reasons.

### 1. Irreparable Harm

To constitute irreparable harm, an injury cannot be theoretical; rather, it must be certain, great, and actual. *Heidman v. S. Salt Lake City*, 348 F.3d 1182, 1189 (10th Cir. 2003) (citation omitted). Irreparable harm is more than "merely serious or substantial" harm. *Id*. (quoting *Prairie Band of Potawatomi Indians v. Pierce*, 253 F.3d 1235, 1250 (10th Cir. 2001)). This is satisfied by a movant demonstrating that there is a significant risk of harm that cannot be cured by monetary damages. *Greater Yellowstone Coal. v. Flowers*, 321 F.3d 1250, 1258 (10th Cir. 2003) (citations omitted).

Irreparable harm is the most important factor in obtaining a preliminary injunction. *Hill's Pet Nutrition, Inc.*, 258 F. Supp. 2d, at 1205. "Loss of customers, loss of goodwill, and threats to a business['s] viability have been found to constitute irreparable harm." *Id*. Unfair competition resulting from a breach of covenant not to compete is likely to constitute irreparable harm. *Basicomputer Corp. v. Scott*, 973 F.2d 507, 512 (6th Cir. 1992). However, wholly conclusory statements alone will not constitute irreparable harm. *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1261 (10th Cir. 2004).

For the purposes of this motion and in the context of irreparable harm, the court believes Stearns has violated her non-competition covenant. The court can therefore infer irreparable harm. *Basicomputer*, 973 F.2d at 512 (citing *Overholt Crop Ins. Serv. Co. v. Travis*, 941 F.2d 1361, 1371 (8th Cir. 1991) (holding that irreparable harm can be inferred from insurance sales representatives' breach of non-competition covenant)). Defendants argue that Stearns was not directly competing with plaintiffs' business because she was assigned to "private duty" work, which is not an area in which plaintiffs do business. Even after reviewing the evidence presented at two hearings, however, the court does not see the difference in defendants' distinction. The Agreement prohibited Stearns from competing with plaintiff on "services . . . that are the same as **or similar in purpose or function** to those services [Stearns] has provided to the company." (Hearing Pl. Ex. 5 at 5 (emphasis added).) Because the court does not see the distinction defendants are drawing, the court finds Stearns was competing in services that were, at the very least, similar in purpose or function. This conclusion is supported by the testimony regarding Stearns's involvement in securing indigent clients because, while plaintiffs do not compete for indigent clients' business, indigent clients act as loss leaders. In other words, a referral source (hospital, doctor, etc.) may remember a company that took care of an indigent

client of theirs and thus refer other non-indigent clients to that company.  In this way, Stearns was competing in the same market as plaintiffs.

### 2. Balance of Harms

If irreparable harm exists, the court must next weigh that harm against the harm defendant(s) may suffer if the preliminary injunction is granted.  *Retiree, Inc. v. Anspach*, No. 12-2079-JAR, 2013 WL 3820729, at *6 (D. Kan. July 23, 2013).  Since about December or early January, Stearns transitioned off of the referral accounts involved with this litigation.  However, this may be interpreted in two:  On the one hand, it demonstrates the status quo can be maintained throughout the duration of this case; on the other hand, Stearns's transfer may have only been a viable business option while this motion was being litigated.  On balance, the court believes the evidence concerning defendants' knowledge of the non-competition provision sways this factor slightly in favor of plaintiffs.

### 3. Public Interest

The court next asks whether the public interest would be harmed if the preliminary injunction is granted.  Generally, the public interest is served when courts uphold enforceable contracts and where unfair competition is restrained.  *See Retiree*, 2013 WL 3820729, at *7.  In this case, the public interest will not be harmed if a preliminary injunction is granted.

### 4. Likelihood of Success on the Merits

The present injunction is not one of the three disfavored injunctions as outlined in *O Centro*, as the injunction in this case does not alter the status quo, require defendants to *do* something, or afford plaintiffs all the relief that a full trial would.  389 F.3d at 975.  Accordingly, and because plaintiffs have met the three other factors, plaintiffs need only raise "questions going to the merits so serious, substantial, difficult and doubtful as to make them a fair ground for litigation and thus for more

deliberate investigation." *Lundgrin v. Claytor*, 619 F.2d 61, 63 (10th Cir. 1980) (internal quotations omitted). Plaintiffs have done so here.

To establish likelihood of success on the claim for breach of the non-compete or non-solicitation covenants, plaintiffs must show: (1) the existence of a contract; (2) sufficient consideration to support the contract; (3) plaintiffs' performance or willingness to perform in compliance with the contract; (4) defendant Stearns's breach of the contract, and (5) damages to plaintiffs caused by the breach.[1] *Navair, Inc. v. IFR Americas, Inc.*, 519 F.3d 1131, 1137 (10th Cir. 2008). The parties do not dispute the existence of a contract. Also, the parties do not appear to dispute plaintiffs' performance or willingness to perform in compliance with the contract. Rather, defendants argue plaintiffs have failed to show that the contract is supported by sufficient consideration or that Stearns breached the contract.

### i. Consideration

Plaintiffs argue their employment of Stearns was sufficient consideration. Defendants argue the non-compete covenant was not supported by consideration. Defendants' argument, however, is underdeveloped and cites only one case: *Puritan-Bennett Corp. v. Richter*, 657 P.2d 589, 592 (Kan. App. 1983). That case is unavailing because the Kansas Court of Appeals held that "continued employment should not as a matter of law be disregarded as consideration sufficient to uphold a covenant not to compete." *Id*. In other words, mere employment can be adequate consideration for a non-competition clause. *Id*.; *see also Heatron, Inc. v. Shackelford*, 898 F. Supp. 1491, 1499 (D. Kan. 1995). The existence and sufficiency of consideration is a question of fact. *Id*. Although it is possible that defendants may prevail if a trier of fact finds that the Agreement lacks sufficient consideration (and is, therefore, unenforceable), plaintiffs must only show a likelihood of success at this stage, especially where the court applies a liberal standard on this factor. *See Lundgrin*, 619 F.2d at 63. The

---

[1] With respect to damages, the court believes that, at the preliminary injunction stage, plaintiffs' showing of irreparable harm inherently satisfies the damages element of a breach of contract claim.

court finds plaintiffs have demonstrated serious questions regarding consideration that require more deliberative investigation.

### ii. Breach of Contract

The Agreement contained a non-compete covenant and a non-solicitation covenant. Each of these prohibited Stearns from offering services "that are the same or similar in purpose or function to those services Employee has provided to the Company" for a duration of one year after her employment with plaintiff ended, regardless of reason. (Hearing Pl. Ex. 5.) To be enforceable under Kansas law, covenants must be reasonable, based on the particular facts of the case. *Idbeis v. Wichita Surgical Specialists, P.A.*, 112 P.3d 81, 90 (Kan. 2005). In analyzing reasonableness, the Kansas Supreme Court set forth the following factors:

> (1) Does the covenant protect a legitimate business interest of the employer? (2) Does the covenant create an undue burden on the employee? (3) Is the covenant injurious to the public welfare? (4) Are the time and territorial limitations contained in the covenant reasonable?

*Id.* (citing *Weber v. Tillman*, 913 P.2d 84 (Kan. 1996)).

Here, the factors weigh in plaintiffs' favor. First, plaintiffs have a legitimate proprietary interest to protect because Kansas law makes clear that "referral sources are a legitimate interest which can be protected by a restrictive covenant even in the context of a medical practice." *Id.* Second, the covenant does not create an undue burden on Stearns. Plaintiffs state "Stearns can work for Interim . . . so long as she refrains from soliciting the accounts she managed while at Amedisys Holding and restricts herself to genuinely non-skilled, non-medical personal care and support services." (Doc. 53 at 3.) The court believes this does not present an undue burden on Stearns. *See Weber v. Tillman*, 913 P.2d 84, 91 (Kan. 1996). She can work in home and hospice care in any Kansas county other than the counties of Butler, Sedgwick, and Sumner, and she can resume working in this field after the restricted period has ended. Third, the covenant is not injurious to the public welfare because the court heard

testimony that there are several other competitors in this field within the Wichita-area. And there has been no testimony that patients would suffer as a result of enforcing this non-compete covenant. Fourth, the time and territorial limitations are reasonable. She is prohibited from competing with plaintiffs in only those three Kansas counties (Butler, Sedgwick, and Sumner). And that prohibition is only effective for one year. For these reasons, the court finds the non-compete and non-solicitation covenants are reasonable and, therefore, enforceable under Kansas law.

The next question is: Do plaintiffs have a likelihood of success on its claim that Stearns breached these covenants. Defendants contend that Stearns is offering only "private duty" services. With respect to this contention, plaintiffs argue:

> Defendants have defined "private duty" to refer to the payment mechanism – as care that is paid for out of pocket rather than by an insurer or the government. The Covenant, however, does not limit Stearns based on payment source. Rather, it is the *nature* of the work Stearns can do post-resignation, prohibiting her from doing work that is "the same or similar in purpose or function to what she had done at Amedisys Holding.

(Doc. 53 at 6 (emphasis in original).) The court agrees with plaintiffs. The Agreement prohibits Stearns from competing with plaintiffs in the same or similar function or purpose. As noted earlier, defendants' distinction is, at best, unclear. Given that Amedisys's president, Jay Stehly, testified that "private duty" work can encompass skilled nursing work, defendants have conceded that "private duty" work can overlap with the type of work plaintiffs perform. That overlap would constitute, under the terms of the Agreement, the *same* purpose or function. Even if it is materially distinguishable in some respect not apparent to the court on this record, the court believes "private duty" work has a *similar* purpose or function to the work performed by plaintiffs. Therefore, the court finds that plaintiffs have raised serious questions concerning whether Stearns breached the Agreement's non-compete and non-solicitation covenants.

**5. Equitable Tolling / Extension of the Covenant**

The court asked the parties to brief the issue of whether a non-compete or non-solicitation covenant may be extended to make up for the time in which an employee had been in breach of the covenant. Ultimately, under Kansas law, "a court of equity may extend equitable relief beyond the contract terms if reasonably necessary." *Puritan-Bennett Corp. v. Richter*, 679 P.2d 206, 211 (Kan. 1984). In the present case, plaintiffs' request—that the court equitably extend the non-compete provision for a length of time equal to the time Stearns was purportedly in breach—is reasonable. This is bolstered by the tolling provision in the Agreement. (*See* Hearing Pl. Ex. 5. at 6.) Accordingly, the court will extend the terms of the non-compete and non-solicitation provisions to the extent permitted under the Agreement.

The Agreement's non-compete and non-solicitation provisions expired on March 24, 2015, one year from Stearns's termination date. According to plaintiffs, Stearns was in breach for approximately seven months because Stearns complied with the Agreement in April and May of 2014 and appears to have been in compliance since sometime in January 2015 until now. (Doc. 53 at 9−10.) The court believes this is a reasonable calculation. Therefore, the court equitably extends the Agreement until October 23, 2015—a period of seven months beginning as of the date of the last hearing on this motion, March 23, 2015—unless modified by further order of this court.[2]

## V. Bond Requirement

Pursuant to Federal Rule Civil Procedure 65(c), plaintiffs must post a bond in an amount the court deems appropriate to protect defendants from losses and damages if, ultimately, defendants were wrongly enjoined. The court has the discretion to dispense with the bond where the applicant for the injunction has "considerable assets" and is "able to respond in damages" if the defendant is wrongly enjoined. *Monroe Div., Litton Bus. Sys., Inc. v. De Bari*, 562 F.2d 30, 32 (10th Cir. 1977). The court

---

[2] Plaintiffs also calculated this beginning and end date. In any event, because the court took the issue under advisement and issued this later, written opinion, the court will not count Stearns's compliance in that interim period against her.

therefore orders the parties to try to reach an agreement within five days of this order.  If the parties are unable to reach an agreement, each side should submit a brief of no more than five pages that addresses the bond requirement.

## VI. Conclusion

For all of these reasons, the court grants defendants' motion for temporary restraining order and/or preliminary injunction, which the court construed as a motion for a preliminary injunction.  The court notes, however, that the above findings of fact and conclusions of law are made on the basis of the evidence before the court at this stage, and are not in any manner intended to be a final decision on the merits.

**IT IS THEREFORE ORDERED** that Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction (Doc. 4) is granted.

**IT IS FURTHER ORDERED** that defendant Stearns shall comply with the covenants in the Agreement until at least October 23, 2015, unless otherwise modified by further order of this court.  Specifically, defendant Stearns shall not provide, manage, or supervise home health care, hospice care, "private duty" care, and indigent client care within the Kansas counties of Butler, Sedgwick, and Sumner.

**IT IS FURTHER ORDERED** that defendant Interim is enjoined from using, facilitating, or encouraging defendant Stearns to provide, manage, or supervise home health care, hospice care, "private duty" care, and indigent-client care within the Kansas counties of Butler, Sedgwick, and Sumner until at least October 23, 2015, unless otherwise modified by further order of this court.  Interim is also enjoined from using, facilitating, or encouraging defendant Stearns to violate any other covenants in the Agreement.

**IT IS FURTHER ORDERED** that, **either** (1) the parties submit an agreement on the amount of bond required under Federal Rule of Civil Procedure 65(c) within <u>five</u> days of this order, or (2) if the parties are unable to reach an agreement, each party submit a brief of no more than five pages that addresses the amount of bond required under Fed. R. Civ. P. 65(c) within <u>seven</u> days of this order.

Dated this 27th day of April, 2015, at Kansas City, Kansas.

<u>s/ Carlos Murguia</u>
**CARLOS MURGUIA**
**United States District Judge**